JAMES E. WHITMIRE, ESQ.
Nevada Bar No. 6533
jwhitmire@santoronevada.com
NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
nsantoro@santoronevad.com
SANTORO WHITMIRE
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone:     702/948-8771
Facsimile:     702/948-8773

*Attorneys for Defendants/Counterclaimants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | No.: 2:12-cv-00564-MMD-RJJ |
| Plaintiff. | |
| v. | **DEFENDANTS/COUNTERCLAIMANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES** |
| YOUR VITAMINS, INC., d/b/a PROCAPS LABORATORIES, and ANDREW LESSMAN, | |
| Defendants, | **(Oral Argument Requested)** |
| YOUR VITAMINS, INC., d/b/a PROCAPS LABORATORIES, and ANDREW LESSMAN, | |
| Counterclaimants, | |
| v. | |
| THE PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | |
| Counterdefendants. | |

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

Defendants/Counterclaimants Your Vitamins, Inc., d/b/a ProCaps Laboratories, and Andrew Lessman, by and through their undersigned counsel, hereby files their Motion to Compel Production of Documents and Responses to Interrogatories. This Motion is made and based upon the pleadings and papers on file herein, the Points and Authorities below, the Certification of James E. Whitmire, Esq. attached hereto,[1] the additional exhibits attached hereto, and any argument of counsel that the Court may permit.

I.

## INTRODUCTION AND NATURE OF THE CASE[2]

This is an insurance coverage action that involves claims for declaratory relief, breach of contract, bad faith and unfair claims practices. Well over $2.5 million is at issue in this case, which Plaintiffs/Counterdefendants (hereinafter referred to as "Travelers") has refused to pay its insured, Nevada-based Defendants/Counterclaimants (hereinafter referred to as "ProCaps"). Instead of fulfilling its obligations under these policies, Travelers filed this Declaratory Judgment action; ProCaps counterclaimed for the unpaid amounts.

At issue are attorneys fees that ProCaps spent defending itself against the television retail media giant QVC. QVC and ProCaps sell dietary supplements on television. In response to certain actions taken by QVC, ProCaps' CEO, Andrew Lessman, posted blogs on the internet explaining that a certain QVC product was not his product and explained differences between his product and the QVC product. QVC then sued ProCaps and Lessman, alleging that he disparaged their products. ProCaps counterclaimed.

---

[1] Attached hereto as Ex. A is the LR 26-7 Certification of Counsel confirming that, after personal consultation and sincere effort to do so, the parties have been unable to resolve the matters set forth herein without Court action.

[2] A succinct factual background is presented in order to familiarize the Court with the context of the discovery dispute at issue herein. This case involves many factual issues not addressed herein. In order to efficiently present the issues to the Court, Defendants/Counterclaimants are intentionally avoiding inundating the Court with factual detail that is not necessary to the disposition of this Motion. Naturally, should the Court inquire about additional facts that may be necessary to decide the Motion, Defendants/Counterclaimants will promptly address those questions.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

The litigation, which was filed in Delaware and transferred to Philadelphia, was hotly contested. QVC viewed ProCaps as its number one competitor and sought to destroy it. As one of QVC's suppliers put it, Mr. Lessman should "sleep with the fishes." This was "bet the farm" litigation filed by QVC against Travelers' insured, ProCaps.

Immediately, QVC hired an army of New York and Delaware attorneys and sought to bludgeon ProCaps. QVC moved for a temporary restraining order, a preliminary injunctionve, and expedited discovery.[3] After ProCaps successfully defeated these efforts, QVC filed an interlocutory appeal, challenging the denial of the preliminary injunction. The Third Circuit affirmed.

The case was also intensively litigated on the merits. Adding a Philadelphia law firm to its team of attorneys, QVC propounded over 160 document requests and litigated every discovery dispute tooth and nail before the case ultimately settled, eighteen months after it was filed. The terms of the settlement are confidential, and will be disclosed to the Court in confidence. For purposes of this Motion, it may be stated that Travelers paid nothing in indemnity payments.

There is no legitimate dispute that the ProCaps' insurance policy with Travelers covered the underlying litigation, and that it included payment for attorneys' fees.[4] Indeed, Travelers has paid a portion of the attorneys' fees at issue. But, without justification, Travelers has sought to limits its payments to roughly half of the fees that ProCaps actually incurred. There are two primary issues. First, Travelers has contended that it need not reimburse ProCaps for any attorney's fees and costs that were incurred in the few months before ProCaps notified Travelers of the litigation -- even though Nevada law requires payment absent a showing of prejudice, and Travelers has never contended (and simply cannot contend) that it was prejudiced at all by the

[3] To familiarize the Court with the nature of the underlying action, ProCaps is attaching hereto the initial Complaint (Ex. B), the Motion for TRO and Memorandum of Points and Authorities in Support Thereof (Ex. C), the Opposition to the Motion for TRO (Ex. D) and the Reply to the Opposition to Motion for TRO (Ex. E).

[4] Excluding defense costs, Travelers insured ProCaps for at least $11 million ($1 million per year and $10 million excess per year).

delayed notice.[5] Second, Travelers has taken the position that it could cap all attorneys' fees at $300 per hour, notwithstanding the facts that its insurance policy imposes no cap and market rates for attorneys handling a dispute of this nature are well in excess of $300 per hour.[6] Assuredly, QVC was paying its many lawyers more than $300 per hour.

ProCaps disagreed with Travelers' arbitrary limitations on payment, but told Travelers that they should postpone resolution of this disagreement until after the litigation with QVC was complete. Travelers appeared to concur, sharing ProCaps' view that the both parties were reserving their rights on the disputed amount. But, a year later, and without any notice, Travelers sued ProCaps in bad faith while the QVC action was still ongoing. According to Travelers' insurance adjuster, Travelers filed when it did in an attempt to pressure ProCaps into a settlement with QVC. Travelers figured, she said, that ProCaps did not want to fight a two-front war.

Travelers ultimately agreed to dismiss the suit without prejudice. After the underlying action concluded, however, Travelers refiled its case in the Spring of 2012. Counterclaims were thereupon asserted against Travelers for, among other things, its bad faith and unfair claims practices.

Shortly after the Rule 26(f) conference occurred in June, 2012, ProCaps served a first set of document production requests upon Travelers on July 5, 2012. The discovery requests were narrowly tailored to address matters involving the three key issues in this case (i.e. pre-tender fees, reasonableness of Sidley's rates when viewed in context with the underlying litigation, and Travelers bad faith). Travelers served its objections and responses -- without producing any documents -- nearly forty (40) days later on August 16, 2012. See, Ex. F. Travelers objections and responses to the short set of interrogatories is attached hereto as Ex. G.

Several "meet and confers" have occurred since Travelers served its responses. See, Certification of Counsel attached hereto as Ex. A per LR 26-7. Following the initial two hour meet and confer, Travelers began to slowly produce documents on a rolling basis. As discussed

---

[5] The principal amount at issue with respect to the pre-tender matter is approximately $903,000.

[6] The principal amount at issue with respect to the reasonableness of rates/expenses matter is approximately $1.825 million.

below, Travelers' production is incomplete. The parties have reached an impasse regarding their disputes, and court intervention is now required to resolve the dispute.

The following chart summarizes the chronological history of the case, the meet and confer process and the timeline of Travelers' evasive and incomplete production. Attached to the LR 26-7 Cerfification are relevant e-mails illustrating additional sincere good faith attempts, beyond personal consultation, to resole the parties' disputes without Court intervention.

| Date | Description |
|------|-------------|
| 4/5/12 | Complaint filed by Travelers |
| 5/11/12 | Counterclaim filed by ProCaps |
| 6/1/12 | Reply to Counterclaim filed by Travelers |
| 6/7-28/12 | Rule 26(f) Conference and Initial Disclosures |
| 7/5/12 | ProCaps serves its first set of discovery requests upon Travelers. |
| 8/16/12 | Travelers,, after a ten day extension of time, serves its objections and responses to production of documents. Ex. F and G attached hereto. No documents actually produced by Travelers. |
| 8/24/12 | First telephonic meet and confer that lasts approximately two (2) hours. |
| 8/29/12 | Travelers produces a heavily redacted claims notes 1-203 and certified copies of insurance policies that were not even the subject of the discovery requests. |
| 8/30/12 | Attempted meet and confer with corresponding e-mail articulating concerns with Travelers positions. Ex. A attached hereto. |
| 9/4/12 | Travelers files Motion for Partial Summary Judgment against ProCaps in the midst of the current discovery dispute. |
| 9/11/12 | Second telephonic meet and confer with representation that additional portions of claims file materials are being produced and that other issues are still being vetted. |
| 9/12/12 | Travelers produces documents marked 375-2409. |
| 9/14/12 | Upon inquiry as to whether Travelers is done vetting, ProCaps counsel informed that no further |

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

| | |
|---|---|
| | documents will be voluntarily produced by Travelers. |
| 9/20/12 | Deposition of Travelers claims manager Heather Miranda in CT wherein it is confirmed that additional claims file materials have not been produced. |

## II.

### TRAVELERS' POSITIONS ARE FUNDAMENTALLY AT ODDS WITH THE RELEVANT RULES OF CIVIL PROCEDURE

Travelers' boilerplate pattern objections are that ProCaps' discovery requests are irrelevant, overly broad and call for the production of proprietary business information. Before addressing the particular discovery requests at issue herein, ProCaps will briefly comment on the overarching fundamental flaws in Travelers' positions.

**A.   Travelers Consistently Ignores the Rule that the Scope of Discovery Is Broad.**

*Rule 26(b)(1) of the Federal Rules of Civil Procedure*, as amended in 2000, provides that a party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Relevancy under *Rule 26(b)(1)* remains broad and is liberally construed. EEOC v. Caesars Entertainment, Inc., 237 F.R.D. 428, 431-32 (D. Nev. 2006). In this case, Travelers has improperly defined "relevance," in the narrowest terms possible, in direct contravention of the Federal Rules of Civil Procedure.

**B.   Travelers Consistently Fails to Articulate Alleged Burden**

The party opposing discovery has the burden of showing that the discovery is overly broad, unduly burdensome or not relevant. Graham v. Casey's General Stores, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000). To meet this burden, the objecting party must specifically detail the reasons why each request is irrelevant. Id., citing Schaap v. Executive Indus., Inc., 130 F.R.D. 384, 387 (N.D. Ill. 1990); Walker v. Lakewood Condominium Owners Assoc., 186 F.R.D. 584, 587 (C.D. Cal. 1999). Here, Travelers has made no legitimate attempt to articulate alleged burden. Instead, it has asserted disfavored conclusory boilerplate objections regarding burdensomeness.

- 6 -

**C.**   **Travelers Cannot Legitimately Object on Proprietary Information Grounds Given that a Protective Order Has Been Entered in this Case**

Throughout Travelers' responses, an objection has been asserted to the effect that documents will not be produced because the pertinent request "involves proprietary business information." Ex. F (passim). The "proprietary business information" objection is invalid given that a protective order was entered in this case on September 17, 2012. [Dkt. 32]. Accordingly, Travelers' "proprietary business information" objections should be summarily rejected.

**III.**

**SPECIFIC DOCUMENT PRODUCTION REQUESTS AT ISSUE**

**A.**   **Underwriting Files (Requests Nos. 1 and 2)**[7]

Travelers improperly refuses to produce its underwriting files pertaining to ProCaps (request no. 1 relates to the primary policies, and request no. 2 relates to the excess policies). Travelers did not even assert a burdensomeness objection to these requests because there is absolutely no burden associated with the production of the underwriting file.

---

[7]   The full text of the requests and responses thereto are set forth below:

**REQUEST NO. 1:**   Produce all documents relating to the underwriting process concerning Insurance Policy Nos. Y-630-0544L813-TIL [08 through 10] referenced in the Complaint for Declaratory Relief. This request includes, but is not limited to, Plaintiffs' underwriting file, all materials received, reviewed and/or generated by any of Plaintiffs' representatives (including but not limited to employees, attorneys or any other person with actual or apparent authority acting on behalf of Plaintiffs) concerning said policies prior to their issuance.

**RESPONSE:**   Travelers objects to request No. 1 because it seeks information which is irrelevant, not likely to lead to the discovery of relevant information, and involves proprietary business information.

**REQUEST NO. 2:**   Produce all documents relating to the underwriting process concerning Insurance Policy Nos. YFS-EX-0544L813-TIL [08 through 10] referenced in the Complaint for Declaratory Relief This request includes, but is not limited to, Plaintiffs' underwriting file, all materials received, reviewed and/or generated by any of Plaintiffs' representatives (including but not limited to employees, attorneys or any other person with actual or apparent authority acting on behalf of Plaintiffs) concerning said policies prior to their issuance.

**RESPONSE:**   Travelers objects to request No. 2 because it seeks information which is irrelevant, not likely to lead to the discovery of relevant information, and involves proprietary business information.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

Travelers' boilerplate objections should be overruled. First, as noted above, the fact that a Protective Order has been entered moots out any purported concern that the underwriting file "involves proprietary business information." Second, Travelers' relevancy objection has no merit whatsoever. Not only is relevancy viewed broadly for discovery purposes, courts have routinely ordered the production of underwriting files in insurance coverage cases. See, e.g. Phillips v. Clark County School District, 2012 WL 135705 (D. Nev. 2012).

Not only does case law exist that supports the production of the files, the facts of this case warrant production. The underwriting files pertain directly to ProCaps, which paid several hundred thousands of dollars in premiums for coverage that is now being denied. The communications that took place (or lack thereof) before the issuance of the policy are extremely relevant to the contested issues in this case. Here, Travelers acts as though the parties had discussed and agreed (1) to cap attorney rates at $300 per hour, and (2) to bar the insured from recovering any pre-tender fees even absent prejudice to the insurer. Not only are the contents of the underwriting file relevant to show what negotiations and other communications occurred concerning the procurement of the insurance policy, the underwriting file in this case is also relevant to show what is not contained in the file. For example, nowhere within the file will there be any indication that rates would be capped and/or that pre-tender fees would be prohibited. In sum, Travelers should be compelled to produce their underwriting file subject to the Protective Order that has been entered in this case.

**B.   Claims File, including Reserve Information (Request Nos. 3 and 4)[8]**

[8]   The request and response thereto are set forth below:

**REQUEST NO. 3:** Produce Plaintiffs' claims file concerning Insurance Policy Nos. Y-630•0544L813-TIL [08 through 10] referenced in the Complaint for Declaratory Relief. This request includes, but is not limited to, any computerized log notes or other entries that in any way pertain to the claims handling process. This request also includes, but is not limited to, all internal correspondence and any other documents relating to claims under the above- referenced policies.

**RESPONSE:** Travelers objects to request No. 3 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Without waiving any objection, Travelers refers ProCaps to the unprivileged, non-confidential portions of the claim file documents produced or to be produced.

Travelers has failed to produce its entire claims file despite multiple representations that its claims files would be produced. Since August 16, 2012, Travelers has repeatedly stated, "Travelers refers ProCaps to the unprivileged, non-confidential portions of the claim file documents produced or to be produced." Ex. F (passim). Since mid-August, Travelers' production has been sporadic as evidenced by the chart set forth at page 5-6 herein. The first 203 pages were produced in late August – nearly two months after ProCaps propounded their requests. Thereafter, Travelers produced additional portions of the claims file, which is still incomplete. The major deficiencies identified with respect to Travelers' production are discussed in more detail below.

### 1. Redactions

Wholesale redactions have been made throughout the production to date. Submitted herewith as Ex. H is a CD containing Travelers' production (the CD is being delivered to the Court to allow the materials to be quickly reviewed on a computer in pdf format). A few "mouse clicks" of pages 1-203 will immediately show the nature and magnitude of redactions that have been made throughout the file. To date, no privilege log has been produced to ProCaps to even allow it to assess whether the redactions are remotely appropriate. The redactions are patently suspect. In sum, an un-redacted claims file should be produced. In the event that un-redacted portions of the file are not ordered to be produced, an in-camera inspection should be ordered to occur.

────────────────── (continued)

**REQUEST NO. 4:** Produce Plaintiffs' <u>claims file</u> concerning Insurance Policy Nos. YFS-EX•0544L813-TIL [08 through 1 0] referenced in the Complaint for Declaratory Relief. This request includes, but is not limited to, any computerized log notes or other entries that in any way pertain to the claims handling process. This request also includes, but is not limited to, all internal correspondence and any other documents relating to claims under the above- referenced policies.

**RESPONSE:** Travelers objects to request No. 4 to the extent it seeks information protected from disclosure by the attorney-client privilege, work ·product doctrine, or other similar protection. Without waiving any objection, Travelers refers ProCaps to the unprivileged, non-confidential portions of the claim file documents produced or to be produced.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 - fax (702) 948-8773

## 2.   Reserve Information

Reserve information, including but not limited to damages worksheets, has been improperly redacted and/or otherwise not produced. Such reserve information is highly relevant in this case, which involves a very hotly contested underlying complex commercial litigation matter that involved significant liability exposure and which was expensive to litigate. The reserves set by Travelers are important to show either: (a) that Travelers grossly underestimated the complexity/magnitude of the underlying matter (by setting reserves for defense and indemnity unreasonably low) or (b) that Travelers fully appreciated the massive undertaking and complexity in the underlying litigation. Either scenario is relevant to ProCaps ability to prove its claims in this case.

Travelers cannot legitimately take the position that defense costs in the underlying matter were unreasonably high, and simultaneously shield its mental impressions as to how it viewed/valued the underlying case. Not only is Travelers' position illogical and in contravention of the broad relevancy standard for discovery purposes, Travelers' position ignores the significant body of case law that holds that reserve information is discoverable. See, e.g., U.S. Fire Ins. Co. v. Bunge No. Am., Inc., 244 F.R.D. 638 (D. Kan. 2007); Savoy v. Richard A. Carrier Trucking, Inc., 176 F.R.D. 10 (D. Mass. 1997) ("the date and amount of the reserve, as well as any modification of that amount, may well relate to [the insurer's] determination of its potential risk in this matter and, hence, reveal its view on liability."); North River Ins. Co. v. Greater New York Mut. Ins. Co., 872 F. Supp. 1411 (E.D. Pa. 1995) ("[t]he reserves, of course, must have some relationship to the insurer's estimation of the insured's potential liability. Otherwise, the setting aside of reserves would serve little, if any, purpose."); Brothers Petroleum, LLC v. Underwriters at Lloyd's London, 2008 U.S. Dist. LEXIS 51389 (E.D. La. 7/2/08) (court held that reserve information was discoverable when the plaintiff asserted a bad faith claim); Culbertson v. Shelter Mut. Ins. Co., 1998 U.S. Dist. LEXIS 16932, 1998 WL 743592 (E.D. La. 1998) (finding insurance reserve information discoverable when a claim for bad faith is asserted because it "may demonstrate or lead to admissible evidence with respect to the thoroughness which defendant investigated and considered plaintiff's . . . claim").

### 3.   Significant Portions of the Claims File Still Have Not Been Produced

Major portions of the claims file have not been produced. At a recent deposition taken on September 20, 2012, Heather Miranda, a claims manager for Travelers, testified about different screens that an adjuster may view with respect to a particular file (e.g. "Claimant Screen," "Notes," "Participant Screen," "Claim Summary," "Liability Worksheets," etc.). She affirmatively testified that she did not see those screens/views in the claims file that Travelers produced.[9] Screen shots such as "Claim Summary" (which includes information such as the policy number, finances associated with the case, defense expenses, indemnity expenses and reserves) are obviously relevant to this matter. There is no legitimate reason why that information has not been produced in the nearly two and a half months since the discovery requests were served upon Travelers.

### C.   Documents Relating to How Counsel Is Selected by Travelers

A central issue in this case involves Travelers' objection to the use of Sidley Austin LLP ("Sidley") to defend the underlying matter. Travelers has zealously contended that other counsel could have defended the underlying matter at rates significantly lower than those charged by Sidley. To test Travelers' assertions, ProCaps propounded basic discovery requests seeking information concerning the criteria by which Travelers deems a firm to be qualified to defend an insured and/or itself in a given matter. Rather than responding to the requests, Travelers has asserted a series of blanket boilerplate objections. The particular requests and objections thereto which are the subject of the motion to compel on this topic are set forth below

> **REQUEST 10:** Produce any claims manual(s), guidelines, bulletins, or other documents that contain provisions applicable to how attorneys/law firms are chosen to be selected to Plaintiffs' panel counsel.
>
> **RESPONSE:** Travelers objects to request No. 10 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to request No. 10 because it seeks information which is overbroad, irrelevant, not likely to lead to the discovery of relevant information, vague and ambiguous, unduly

---

[9] The transcript has not yet been received. The relevant portions of the transcript will be filed as a supplemental exhibit upon receipt of the transcript.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

burdensome, and involves proprietary business information.

\* \* \*

**REQUEST 15:** Produce all documents that relate in any way as to how Plaintiffs determine whether a particular law firm is qualified to act as defense counsel <u>for their insured.</u>

**RESPONSE:** Travelers objects to request No. 15 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to request No. 15 because it seeks information which is overbroad, irrelevant, not likely to lead to the discovery of relevant information, unduly burdensome, and involves proprietary business information.

\* \* \*

**REQUEST 16:** Produce all documents that relate in any way as to how Plaintiffs determine whether a particular law firm is qualified to act as defense counsel <u>for Plaintiffs.</u>

**RESPONSE:** Travelers objects to request No. 16 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to request No. 16 because it seeks information which is overbroad, irrelevant, not likely to lead to the discovery of relevant information, unduly burdensome, and involves proprietary business information.

Conspicuously absent from all of these responses is any claim by Travelers that the requested documents do <u>not</u> exist. Such documents obviously exist as it would make no sense for an insurance carrier to have no documents concerning how an attorney is selected for a given case. Given that the documents do exist, the question becomes whether the documents should be produced. The answer to that question is an unequivocal yes.

Travelers put into issue the notion that other attorneys were perfectly qualified to represent ProCaps in the complex underlying matter, in which QVC was represented by an international law firm and two other firms. Given that Travelers put qualifications of counsel into issue, Travelers cannot now legitimately shield from production documents that pertain to how it determines whether a particular firm is qualified for a matter.

- 12 -

A few examples will further illustrate the validity of ProCaps' position. If the requested documents generally state that an insured should be competently represented by firms with the skill, reputation and manpower to handle a complex matter in the relevant jurisdiction, then those documents will help support the use of Sidley as counsel to represent it in the underlying action. If Travelers itself has criteria that it uses to hire a major national firm to represent itself in complex business disputes, then that selection criteria is relevant to show that the same criteria used by Travelers when it is hiring counsel should also be used when its insured is encountering "bet the farm" litigation. If Travelers' selection criteria states that an insured must hire the cheapest firm that is minimally qualified to represent an insured, then those documents are relevant to ProCaps' arguments regarding bad faith and unfair claims practices.

Clearly, attorney selection documents exist within the four walls of Travelers. One can reasonably assume that Travelers seeks to shield those documents from production because those documents will show that Travelers is too focused on rate issues as opposed to ensuring that its insureds are represented by a firm that had the skill and depth necessary to handle a vitriolic complex commercial litigation matter. In sum, relevance – certainly for discovery purposes – can be established on multiple independent bases.

Aside from the relevancy issue, nowhere does Travelers legitimately articulate any burden associated with this request. Its objections are classic boilerplate. Furthermore, Travelers' "proprietary business information" objection lacks merit in light of the fact that a Protective Order has been entered.

**D.   Billing Guidelines (Requests Nos. 19 and 20)**[10]

---

[10]   The request and response thereto are set forth below:

**REQUEST 19:**   Produce "Travelers' billing guidelines for <u>non-panel</u> defense counsel" as referenced in the Complaint for Declaratory Relief.

**RESPONSE:**   Without waiving any objection and for its response to request No. 19, Travelers refers ProCaps to the unprivileged, non-confidential portions of the claim file documents produced or to be produced.

**REQUEST 20:**   Produce Travelers' billing guidelines for <u>panel</u> defense counsel.

**RESPONSE:**   Travelers objects to request No. 20 because it seeks information which is irrelevant and not likely to lead to the discovery of relevant information.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

Travelers has complained about attorneys' fees for years, yet it now refuses to produce documents concerning its own billing guidelines. Travelers does not even assert a burdensomeness objection to these requests. It can not assert such an objection since the billing guidelines are available by a mere keystroke on a computer.

Instead of just producing the documents, Travelers takes the overly aggressive position that billing guidelines for panel counsel are irrelevant in this case. That position is absurd given that Travelers contends that panel counsel should have been used to defend ProCaps.

Not only are the billing guidelines relevant to explore the standards by which Travelers itself assesses billing issues, the guidelines can be used to show how obsessive Travelers is on cost-containment issues to the detriment of the insured. Moreover, if panel counsel was supposedly so qualified to handle ProCaps defense, then ProCaps should certainly be entitled to see the constraints, if any, that would have been imposed upon panel counsel. The guidelines may be used to show the unreasonableness of Travelers' positions and its bad faith.

## E.   Documents Concerning Reasonableness of Rates

Perhaps the most hotly contested issue in this case involves Travelers' objection to the rates charged by Sidley to defend the underlying matter. Travelers contends that Sidley and local counsel charged excessive rates because they charged more than $300 per hour. Travelers unilaterally decided that it was not going to pay market rates. That decision is subject to challenge by ProCaps.

To test Travelers' position as to the rate issue, a series of document production requests were served by ProCaps that go directly to the reasonableness of rates issue. Rather than responding to the requests, Travelers asserted a series of blanket boilerplate objections. The particular requests and objections thereto which are the subject of the motion to compel on this topic are set forth below

> **REQUEST 11:** Produce any claims manual(s), guidelines, bulletins, or other documents that contain provisions applicable to determining what rates are reasonable for a particular matter.

- 14 -

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

**RESPONSE:** Travelers objects to request No. 11 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to request No. 11 because it seeks information which is overbroad, irrelevant, not likely to lead to the discovery of relevant information, vague and ambiguous, unduly burdensome, and involves proprietary business information.

\* \* \*

**REQUEST 17:** Produce all documents that relate in any way as to how Plaintiffs determine what a reasonable rate is for a particular matter.

**RESPONSE:** Travelers objects to request No. 17 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to request No. 17 because it seeks information which is overbroad, unduly burdensome, and involves proprietary business information.

\* \* \*

**REQUEST 18:** Produce all documents that relate in any way as to who, as between Plaintiffs or an insured, gets to decide whether a particular rate is reasonable.

**RESPONSE:** Travelers objects to request No. 18 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to request No. 18 because it seeks information which is overbroad, unduly burdensome, and involves proprietary business information.

\* \* \*

**REQUEST 35:** For those cases in which Plaintiffs or any related company has been sued where the amount in controversy exceeded $10 million, produce documents reasonably necessary to identify: a) the Complaint at issue; b) the jurisdiction at issue; c) the law firm retained to represent Plaintiffs or their related company; and, d) the hourly rates paid on behalf of Plaintiffs.

**RESPONSE:** Travelers objects to request No. 35 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to this request because it seeks information which is overbroad, unduly burdensome, irrelevant, not likely to lead to the discovery of relevant information, vague and ambiguous, unduly burdensome, and involves proprietary business information.

\* \* \*

- 15 -

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

**REQUEST 36:** Produce all documents reasonably necessary to show all instances in which Plaintiffs or any of their related companies paid an hourly rate exceeding $300 per hour within the last ten (10) years. This requests billing statements, for example, which would reflect these instances and the particular case name in which the rates were paid.

**RESPONSE:** Travelers objects to request No. 36 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to this request because it seeks information which is overbroad, unduly burdensome, irrelevant, not likely to lead to the discovery of relevant information, and involves proprietary business information.

\* \* \*

**REQUEST 37:** Produce all documents reasonably necessary to show the five (5) highest billing rates paid by Plaintiffs or any of their related companies on behalf of themselves when they have been sued within the last ten (10) years.

**RESPONSE:** Travelers objects to request No. 37 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to this request because it seeks information which is overbroad, unduly burdensome, irrelevant, not likely to lead to the discovery of relevant information, and involves proprietary business information.

\* \* \*

**REQUEST 38:** Produce all documents reasonably necessary to show the five (5) highest billing rates paid by Plaintiffs or any of their related companies on behalf of an insured who has been sued within the last ten (10) years.

**RESPONSE:** Travelers objects to request No. 38 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to this request because it seeks information which is overbroad, unduly burdensome, irrelevant, not likely to lead to the discovery of relevant information, and involves proprietary business information.

Each of the foregoing requests is narrowly tailored to address a central issue in this case. Of course, Travelers does not take the position that the requested documents do not exist. Instead, it just stonewalls in producing such documents based upon its boilerplate objections.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

The requested documents are clearly relevant in this case. The requested documents may very well support the rates that Sidley and local counsel charged—for example, if Travelers has paid similar rates in the past. The requested documents may also show the unreasonableness of Travelers' position (i.e. if documents say use the least expensive counsel who is minimally qualified in your mind to handle a particular case). And, the requested documents may demonstrate inconsistent treatment between how Travelers pays counsel to defend itself as compared to its insureds. For example, if Travelers deems itself worthy of paying higher rates for national counsel in a business litigation matter, then those documents should be able to be used to show that its insureds should be entitled to similar treatment.[11]

It should also be noted that Travelers should not be able to unilaterally define the scope of discovery and/or otherwise be allowed to take the position that just because it pays panel counsel a certain rate, it therefore follows that Sidley's rates should be capped at $300 per hour. A case that illustrates the flaw in Travelers' position is Watts Water Technologies, Inc. v. Fireman's Fund Ins. Co., 22 Mass. L. Rptr. 659, 2007 Mass. Super. LEXIS 266 (2007). That Watts case actually involved Travelers. In Watts, the court squarely addressed the issue of whether an insured may use national counsel to defend itself, and the reasonableness of rates charged in connection with such defense. The Watts court held that the insurance carriers, including Travelers, had a duty to pay for legal work performed by national counsel on behalf of an insured. The court also held that the insurance carriers could not unilaterally cap rates and that what was reasonable depended on a variety of factors. In relevant part, the court stated:

> This Court declares that the legal standard for determining the reasonableness of legal fees incurred by an insured when the insurance company recognizes its duty to defend under a reservation of rights is the *Linthicum* standard, with its various factors but without any legal presumptions. One of the *Linthicum* factors is "the usual price charged for similar services by other attorneys in the same area," *Linthicum, 379 Mass. at 389, not the*

---

[11] A preliminary search of public records has revealed that Travelers has retained national counsel to represent it in various lawsuits. The rates paid by Travelers (presumably not at $300 per hour) and the type of case is highly relevant to the reasonableness of rates issue in this case. If, for example, Travelers pays $700 per hour, it would be hypocritical for Travelers to suggest that its insureds should be barred from hiring counsel which charges similar rates.

usual price paid *by insurance companies* to other attorneys for similar services in the same area.

Watts, 2007 Mass. Super. LEXIS 266 at *34 (emphasis in original).[12]

In sum, given that Travelers insists that the rates should have been capped at $300 per hour and/or otherwise limited, ProCaps should be entitled to obtain meaningful discovery on how Travelers determines the reasonableness of rates. The discovery is also relevant with respect to ProCaps bad faith claims. Accordingly, an order compelling production should be entered.

F.     **Documents Relating to Audits of Bills (Requests Nos. 12, 31 and 32)**[13]

---

[12]     In determining the reasonableness of attorneys' fees, the Linthicum court stated that the factfinder "should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." Linthicum v. Archambault, 379 Mass. 381, 388-89, 398 N.E.2d 482 (1979).

[13]     The request and response thereto are set forth below:

**REQUEST 12:** Produce any claims manual(s), guidelines, bulletins, or other documents that contain provisions applicable to the auditing of outside counsels' bills.

**RESPONSE:** Travelers objects to request No. 12 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to request No. 12 because it seeks information which is overbroad, irrelevant, not likely to lead to the discovery of relevant information, vague and ambiguous, unduly burdensome, and involves proprietary business information. Without waiving any objection, Travelers refers ProCaps to the unprivileged, non-confidential documents produced or to be produced.

**REQUEST 31:** Produce all documents that in any way relate to the auditing of bills of Sidley Austin LLP or any local counsel working on behalf of Defendants. This request encompasses any documents generated by Plaintiffs and any documents generated by third-parties retained by Plaintiffs to perform any audits.

**RESPONSE:** Travelers objects to request No. 31 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Without waiving any objection, Travelers refers ProCaps to the unprivileged, non-confidential portions of the claim file documents produced or to be produced.

**REQUEST 32:** Produce all documents that reflect the time and monetary cost associated with the review of Sidley invoices as referenced in the Complaint for Declaratory Relief. This request includes, but is not limited, to Plaintiffs' internal documents that relate to this issue and any documents generated by any outside party working on behalf of Plaintiffs to review and/or audit Sidley's invoices.

- 18 -

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

Travelers repeatedly had Sidley's bills audited during the course of the underlying litigation. The documents produced to date appear to show that Travelers was more concerned about bill audits than it was in assessing the merits of the underlying case.

Given that Sidley's bills were audited and given that Travelers has put Sidley's bills at issue in this case, ProCaps served three targeted requests to the issue of bill auditing. Request No. 12 sought general auditing guidelines. Request No. 32 sought documents relating to the audits of Sidley's bills. Request 33 sought documents reflecting the time and cost associated with the audits of Sidley's bills.

Travelers production has been woefully deficient. In the documents produced to date, Travelers has produced no manuals, guidelines or other general documents regarding outside counsel bill audits pursuant to Request No. 12. Certainly, such documents exist. Travelers' representation that such documents have been produced or will be produced is inaccurate. With respect to the specific bill audits pertaining to Sidley (as requested in Request 31), ProCaps cannot determine whether all of the auditing documents have been produced. In the event additional audit documents exist, such documents should be ordered to be produced. With respect to the amount of time and money spent by Travelers with respect to the Sidley bill audits (as requested in Request No. 32), these documents will help show Travelers' unreasonable focus and time on chiseling down bills as opposed to ensuring the best representation for its insured.[14]

## F.   Documents Concerning Other Pre-Tender Fees Costs Reimbursement

Document production request no. 39 goes to the other central issue in this case; namely, the reimbursement of pre-tender fees and costs issue. In Request No. 39, ProCaps is attempting to determine how many other cases in which Travelers has paid pre-tender fees and costs. The request and response thereto is set forth in full below.

———————————————— (continued)

**RESPONSE:**   Travelers objects to request No. 32 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Travelers further objects to this request because it seeks information which is irrelevant and not likely to lead to the discovery of relevant information.

[14] Travelers' obsession over Sidley's bills are relevant to the bad faith and unfair claims practices claims for relief in this matter.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

**REQUEST 39:**     Produce all documents that reflect all instances where, within the last ten (10) years, Plaintiffs or their related companies have reimbursed an insured for legal expenses incurred before notice of a claim was sent to Plaintiffs or their related companies.

**RESPONSE:** Travelers objects to request No. 39 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection.   Travelers further objects to this request because it seeks information which is overbroad, unduly burdensome, irrelevant, not likely to lead to the discovery of relevant information, and involves proprietary business information.

Travelers does not deny that the requested documents exist and/or that it has paid pre-tender fees and expenses for other insureds.  In fact, significant evidence is developing that Travelers has frequently paid pre-tender fees.

Obtaining the evidence to show that Travelers frequently pays pre-tender fees and costs is important for ProCaps.   First, showing instances that other insureds were reimbursed for pre-tender fees and costs issues is highly relevant to show that the insurance policy at issue in this case does not clearly and unambiguously prohibit the recovery of such fees and expenses.[15]   Second, showing actual examples of situation where Travelers paid pre-tender fees will help illustrate the unreasonable bad faith positions taken by Travelers.[16]

Moreover, the production of the requested materials is amply justified pursuant to persuasive authority set forth in Phillips v.  Clark County School District, 2012 WL 135705 (D. Nev. 2012).  As noted by Magistrate Judge Foley in Phillips, discovery concerning other cases involving the same policy provision should be permitted:

Two examples of extrinsic evidence potentially relevant to the interpretation of an ambiguous insurance policy provision are (1) the policy's drafting history and (2) other claims or lawsuits involving the same policy provision in issue. Courts generally hold that the policy drafting history is discoverable. [citations omitted].  Most courts also

[15]   The requested documents will show that the decision concerning pre-tender fees and costs reimbursement is discretionary, even in the eyes of Travelers, and that Travelers itself recognizes that the insurance policy is, at a minimum, ambiguous.

[16]   The requested documents will show that the decision not to reimburse ProCaps pre-tender fees and expenses in this case was an arbitrary decision made in bad faith to deprive Travelers' insured of benefits for which premiums were paid.

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

permit discovery regarding other lawsuits and claims involving the identical policy provisions. Sunnen Products Co. v. Travelers Cas. and Sur. Co., 2010 U.S. Dist. LEXIS 16953, 2010 WL 743633, at *2; Transcap Associates, Inc. v. Euler Hermes American Credit Indemnity Co., 2009 U.S. Dist. LEXIS 46382, 2009 WL 1543857. *2 (N.D. Ill. 2009); Young v. Liberty Mut. Ins. Co., 1999 U.S. Dist. LEXIS 6987, 1999 WL 301688; Leksi v. Federal Ins. Co., 129 F.R.D. at 105-06; and Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 106-07 (D.N.J. 1990). As the court in Nestle observed, such information "may show that identical language has been afforded various interpretations by the insurer" and "could undermine the insurer's position that the language in question is clear and unambiguous." Id., 135 F.R.D. at 106.

\*       \*       \*

In regard to Request Nos. 9 and 10, Defendant states that it "reasonably believes it has been the defendant in two matters involving a policy that contains the CAT Benefit. Neither lawsuit was filed in Nevada, nor was the CAT Benefit directly at issue." Opposition (#54), Declaration of Elaine Langley, ¶ 8. The meaning of the statement that the CAT Benefit was not "directly at issue" is vague. Was it in some manner indirectly at issue?

Defendant also argues that because the lawsuits were filed in other jurisdictions, they are irrelevant to this action which concerns alleged violations of the "Nevada Unfair Claims Practices Act." Opposition (#54), pg. 21. This argument is without merit. Nevada Revised Statute (NRS) 686A.310 was patterned after the National Association of Insurance Commissioners (NAIC) Model Unfair Trade Practices Act, Section 4.9. See Tweet v. Webster, 614 F.Supp. 1190, 1192 (D. Nev. 1985). Numerous states have adopted versions of the NAIC Model Act. See Stephen S. Ashley, BAD FAITH ACTIONS LIABILITY & DAMAGES (2011), §9:2. Lawsuits from another state alleging violation of that state's version of the Model Act, or a substantially similar statute, are therefore potentially relevant and discoverable. The Court, therefore, overrules Defendants relevancy objections to Request Nos. 9 and 10. The Court orders the Defendant to produce the complaints and responsive pleadings in the two lawsuits referred to in Ms. Langley's declaration. Plaintiff may seek additional documents relating to the actions if the pleadings indicate that the actions involved substantially similar claims to those at issue in this action.

It goes without saying that how Travelers has treated similar issues is highly relevant in this case. Just as Magistrate Judge Foley ordered production in Phillips, Travelers should be ordered to respond to the request concerning other cases in which Travelers has reimbursed its insureds for pre-tender fees and expenses.

## G.   Reinsurance (Request No. 40)[17]

Travelers has refused to produce any documents relating to communications with any reinsurers concerning the underlying matter. Such documents should be produced consistent with courts which have ordered the production of such reinsurance information. See, e.g., U.S. Fire Ins. Co. v. Bunge No. Am., Inc., 244 F.R.D. 638 (D. Kan. 2007) ("the Court agrees that production of reinsurance agreements is required by the rule" and acknowledges that communications with reinsurers may lead to the discovery of admissible evidence relating to the insurers defenses of late notice, the policyholder's bad faith claims, the insurance carrier's assessment of the potential liability exposure and admissions regarding the scope of insurance coverage); National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp., 116 F.R.D. 78 (N.D. Ill. 1987) (reinsurance agreements discoverable). As previously discussed, these sorts of documents are relevant to show that Travelers either completely underestimated the magnitude of the underlying litigation or that it did indeed understand what was at stake (which buttress the reasonableness of the utilization of Sidley and the rates charged by Sidely).

### IV.

### SPECIFIC INTERROGATORIES AT ISSUE

Two Interrogatories are the subject of this Motion to Compel. Each interrogatory is discussed, in turn, below.

## A.   Identities of Firms Allegedly Qualified To Represent ProCaps (Intg No. 7)[18].

---

[17] The request and response thereto are set forth below:

**REQUEST NO. 40:** Produce all documents relating to any communications between Plaintiffs and any reinsurer concerning Defendants.

**RESPONSE:** Travelers objects to request No. 40 to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other similar protection. Travelers further objects to this request because it seeks information which is irrelevant, not likely to lead to the discovery of relevant information, and involves proprietary business information.

[18] The interrogatory and response thereto is set forth below:

**INTERROGATORY NO 7:** Set forth the names, addresses, and telephone

- 22 -

Interrogatory No. 7 simply asked for the names of the "several qualified law firms" that Travelers purportedly proffered to ProCaps to act as defense counsel. Rather than provide the list of names, Travelers generally referred ProCaps to the voluminous set of documents that Travelers produced without any reference to specific pages or otherwise. Travelers is in the best position to provide the simple list to ProCaps, yet it insists that ProCaps essentially guess/speculate as to the creation of the list. An order compelling a response to this Interrogatory is appropriate.

**B.   Identities of Those Participating in the Decision to File Suit Against ProCaps**

Interrogatory No. 8 asked Travelers to identify the person who participated in the decision to file suit against ProCaps while the underlying litigation was at a critical juncture. To date, Travelers has asserted advice of counsel as a defense and simultaneously has not disclosed the identities of counsel. Set forth below is the full text of the interrogatory and the response thereto.

> **INTERROGATORY NO. 8:** Set forth the name, job title, address, and telephone number, of any and all persons who participated in, assisted, or otherwise were involved in the decision to file suit <u>against Defendants in or about August 2011 and/or April 2012.</u> This interrogatory encompasses employees, attorneys and/or or any other person with actual or apparent authority acting on behalf of Plaintiffs.
>
> **ANSWER:**   Travelers objects to interrogatory No. 8 to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other similar protection. Without waiving any objections, Travelers states, Amy M. Baker, with the advice and counsel of her attorneys.

Simply put, the identity of the attorneys who provided advice and counsel to Travelers is not privileged. The names of those attorneys should be provided, and an Order compelling a response is needed.

---

(continued)

numbers of the "several <u>qualified law firms [that Travelers purportedly proffered] to act as defense counsel for ProCaps Laboratories</u>" as alleged in the Complaint for Declaratory Relief.

**ANSWER:** Without waiving any objections, Travelers refers ProCaps to the unprivileged, non-confidential portions of the claim file documents produced or to be produced.

- 23 -

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

## V.

## PROCAPS SHOULD BE AWARDED REASONABLE FEES ASSOCIATED WITH THIS MOTION TO COMPEL

Fed. R. Civ. P. 37 authorizes the Court to award reasonable attorneys fees in connection with a Motion to Compel. Here, ProCaps should not have had to file a motion to obtain the relief it seeks. In the event the Court agrees that fees are appropriate, ProCaps is prepared to file a separate Affidavit/Memorandum of Fees and Costs.

## CONCLUSION

For all of the foregoing reasons, Travelers should be ordered to fully respond to the discovery requests at issue herein.

Dated this 28th day of September, 2012.

SANTORO WHITMIRE

/s/ James E. Whitmire
James E. Whitmire, Esq. (NBN 6533)
10001 Park Run Drive
Las Vegas, NV 89145
Attorneys for Defendants/Counterclaimants

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

- 24 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _28th_ day of September, 2012, and pursuant to FRCP 5(b), I deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **DEFENDANTS/COUNTERCLAIMANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES**, postage prepaid and addressed to:

Criag R. Delk, Esq.
THORNDAL, ARMSTRONG, DELK, BALKENBUSH & EISINGER
1100 E. Bridger Ave
P.O. Drawer 2070
Las Vegas, NV 89125
cdelk@thorndal.com
*Attorneys for Plaintiffs/Counterdefendants*

Nicholas D. Butovich, Esq.
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, Illinois 60606
butovich@litchfieldcavo.com
*Attorneys for Plaintiffs/Counterdefendants*

An employee of Santoro Whitmire

SANTORO WHITMIRE
10001 Park Run Drive, Las Vegas, Nevada 89145
(702) 948-8771 – fax (702) 948-8773

- 25 -