UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>    Plaintiffs/Counterdefendants,<br><br>vs.<br><br>YOUR VITAMINS, INC., d/b/a PROCAPS LABORATORIES, and ANDREW LESSMAN,<br><br>    Defendants/Counterclaimants. | 2:12-cv-00564-MMD-NJK<br><br>**O R D E R** |

This matter came before the Court on Defendants' Motion to Compel Production of Documents and Responses to Interrogatories (#37). The Court has considered the Defendants' Motion (#37), the Plaintiffs' Response (#56), and the Defendants' Reply (#62).

**BACKGROUND**

At issue in this case are the attorneys fees Defendant/Counterclaimant, ProCaps, spent defending itself in litigation against QVC.[1] ProCaps retained Sidly Austin, LLP in that Action, and agreed to rates ranging from $250/hour to $900/hour. The QVC Action commenced on February 10, 2010. On June 10, 2010, ProCaps informed its insurer, Plaintiffs/Counterdefendants, Travelers, about the litigation. At that point, Sidley Austin had already billed ProCaps over $900,000.00. Travelers agreed to defend ProCaps, but advised that Sidley Austin's rates were too high and

---

[1] Both QVC and ProCaps sell dietary supplements on television. ProCaps' CEO, Andrew Lessman, posted blogs about both companies' supplements. In turn, QVC sued ProCaps for allegedly disparaging its' products. The parties ultimately settled.

Travelers would not agree to pay for fees incurred before it was informed about the litigation. Additionally, Travelers offered to retain another law firm in place of Sidley Austin, but ProCaps declined. Travelers then decided that it would agree to $300/hour for attorneys and $75/hour for paralegals. ProCaps disagreed with Travelers' limitations on payment, but communicated to Travelers that it would postpone the disagreement until the QVC action was complete.

The QVC Action was settled in September 2011. Sidley Austin billed $4,877,342.46. Travelers paid $2,276,354.87 plus an additional $1,359,688.08 for document management support vendors, contract attorneys, expert witnesses, the taking of four depositions, and fees and expenses incurred by local defense counsel retained by ProCaps.

ProCaps is seeking payment of costs incurred before Travelers was notified of the QVC Action (pre-tender), approximately $900,000.00, plus payment in full for post-tender fees reflecting the rate differential, $1,700,987.59.

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 37(a), ProCaps seeks an order compelling responses to Requests for Production Nos. 1-4, 10-12, 15-20, 31, 32, 35-40; and Interrogatories Nos. 7 and 8.

When a party fails to respond to written discovery "the discovering party may move for an order compelling an answer . . . in accordance with the request." Fed.R.Civ.P. 37(a)(2)(B). Here, the Defendants/Counterclaimants are seeking more complete responses to their requests.

**I.     Requests for Production**

   A.     Underwriting File - Request Nos. 1 and 2

Request for Production Nos. 1 and 2 request the underwriting files and all documents relating to the underwriting process for two of ProCaps' insurance policies with Travelers. The parties dispute whether the underwriting files are relevant. ProCaps asserts that because it has argued that the "voluntary payment provision" on page 83 of the insurance policy is ambiguous, the drafting history of the underwriting files is relevant. Reply (#62) at 3; citing Response to Plaintiffs' Motion for Summary Judgment at 2, attached as Exhibit A to ProCaps' Reply.

...

- 2 -

When a party asserts that an insurance policy provision is ambiguous, a policy's drafting history is an example of extrinsic evidence potentially relevant to the interpretation of the ambiguous provision. *Phillips v. Clark County Sch. Dist.*, 2012 WL 135705, at *5 (D. Nev. Jan. 18, 2012). "Because relevant information need not be admissible in order to be discoverable, however, the fact that a party is permitted to discover extrinsic evidence does not mean that it will be admissible at trial." *Id*.

Here, ProCaps has asserted the "voluntary payment provision" on page 83 is ambiguous. Thus, the drafting history of that provision is relevant. Accordingly, Travelers must produce documents in its underwriting file relating to negotiations between Travelers and ProCaps only on that provision. To the extend that ProCaps argues the remainder of the underwriting file is relevant, the Court disagrees.

B.  Claims File and Reserve Information - Request Nos. 3 and 4

Request Nos. 1 and 2 request the un-redacted claims files and reserve information for two of ProCaps insurance policies with Travelers.

1.  **Claims Files**

Travelers asserts that it has already produced its claims files along with an appropriate privilege log. Response (#56) at 5. ProCaps still seeks an un-redacted claims file on the basis that the privilege log is "patently suspect given the nature and magnitude of the redactions." Reply (#62) at 3. Under the Federal Rules, a privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

The Court has reviewed the privilege log and finds it deficient. Under Fed.R.Civ.P. 26(b)(5), the privilege log must describe the information that is claimed to be privileged in a manner that "will enable other parties to assess the claim." The majority of Travelers' privilege log fails to describe the claimed privileged information in a manner that would allow the Court to assess the claim. For example, well over half of the entries describe "irrelevant

communications" and "work product." Privilege log, attached as Exhibit 29 to Response (#56). Those entries provide no more explanation other than the asserted privilege. *Id*. Based on those descriptions, the Court cannot assess which notes are privileged and which are not.

Thus, Travelers must provide more detail in its privilege log. Accordingly, the Court orders Travelers to revise or augment its privilege log so that the Court and Plaintiff can adequately assess the claims of protection from disclosure. Travelers has ten days from the signing of this order to comply. If, after Travelers revises the privilege log, the parties wish to bring this dispute before the Court again, they must meet and confer before doing so.[2]

The privilege log shall reveal the identity and position of all senders/creators and addressees/recipients. Travelers shall provide a description of each communication or document withheld with sufficient detail that ProCaps can readily assess the claim of privilege. Although "strategy" or the detailed substance of the subject communications need not be disclosed, Travelers must provide a description of the general topic that is detailed enough that ProCaps can ascertain whether the communication is truly privileged. This is especially important where the asserted privilege is irrelevancy, and it is entirely unclear from the present descriptions that these redactions are irrelevant.

2.   **Reserves**

The parties dispute whether the reserves information is relevant. ProCaps asserts that the reserves information is relevant because it will show how Travelers values the complexity and magnitude of the QVC action. However, reserves information is based in accounting and liquidity and has nothing to do with the merits of a case. Indeed, reserves are often established to comply with applicable laws and regulations. Accordingly, such information is not relevant to this case.

...

...

---

[2] Although the Court defers ordering an *in camera* review or disclosure of the documents as requested by ProCaps, the Court may consider those measures if Travelers fails to comply with the Court Order to provide a sufficient privilege log to the ProCaps.

     C.    <u>Documents Relating to How Counsel is Selected by Travelers - Request Nos. 10, 15, and 16</u>

Request Nos. 10, 15, and 16, seek documents applicable to how attorneys/law firms are chosen to be selected to Travelers' panel counsel and how Travelers determines a law firm is qualified to be defense counsel for itself and for its insured.

     1.    **How Panel Counsel is Chosen - Request No. 10**

In regards to the request for information applicable to how panel counsel are chosen, Travelers asserts that the selection of counsel to defend insured is "hardly a mystery." Response (#56) at 8. It goes on to state that it uses "form lists" for different jurisdictions, and privileged manuals, guidelines, bulletins or other documents which it cannot produce due to privilege. *Id*. However, the Court has reviewed the privilege log and finds no mention of any lists, manuals, guidelines, bulletins or other documents relating to how counsel is chosen. Accordingly, there is no basis for this assertion of privilege. Further, considering this is a case about whether Travelers is obligated to pay for a firm that charges over $300/hour, these documents are relevant. Accordingly, these documents for the relevant jurisdiction should be produced.

     2.    **How Travelers Determines a Law Firm is Qualified to be Defense Counsel for its Insured - Request No. 15**

Travelers objects to Request No. 15 on the grounds that it is too burdensome because this determination is made on a case by case basis.[3] Response (#36) at 9. However, as discussed above, Travelers has already indicated that it has macro policy type documents to this affect. *See*, Supra. Accordingly, if such documents exist, they must be produced.

     3.    **How Travelers Determines a Law Firm is Qualified to be Defense Counsel for Itself - Request No. 16**

ProCaps asserts that it should be given this information because it would be hypocritical for Travelers to be willing to spend more money on its own defense than on the defense of its insured. Motion to Compel (#37) at 13. Travelers was not involved in the QVC Action and how much Travelers spends on its own legal defense has no relevance to this case. Accordingly, these documents shall not be produced.

---

[3]Travelers states that it will have to go through 50,000 claims files to collect this information.

D. <u>Billing Guidelines - Requests Nos. 19 and 20</u>

In its Response (#56), Travelers states that it has already produced its non-panel guidelines and it is willing to produce the panel counsel guidelines, even though it believes they are irrelevant. Response (#56) at 10. ProCaps contends that no such documents have been produced and they are relevant. Reply (#62) at 9.

If Travelers already has produced or has no objection to producing these documents, it is troublesome that a Motion to Compel was brought on this issue. It appears as though the parties did not properly meet and confer. Nevertheless, in the interest of preventing this dispute from coming before the Court again, and because the parties agree the documents may be produced, the Court compels production of these documents.

E. <u>Documents Concerning Reasonableness of Rates - Request Nos. 11, 17, 18, 35, 36, 37, and 38</u>

Travelers makes a number of merit-based arguments concerning the reasonableness of attorney rates. Response (#56) at 10-11.

1. **Request Nos. 11, and 18**

Concerning Request Nos. 11, and 18, Travelers admits that documents exist which would be responsive to these interrogatories. Response (#56) at 11. Travelers has not produced these documents though, because it believes they are privileged and/or producing them would be overly burdensome. *Id*. The Court has reviewed Requests 11, and 18 and finds that they are narrowly tailored to address a central issue in this case. ProCaps is clearly seeking macro policy documents which would be neither privileged nor burdensome to produce. ProCaps is not seeking information that would be in individual claims files. Accordingly, Travelers must produce these documents.[4]

2. **Request No. 17**

The Court finds that request No. 17 asks for privileged information and will not compel Travelers to produce responsive documents.

---

[4] Travelers mentions in its response that some of the related documents would be jurisdiction specific statutes and case law. Response (#56) at 11. Travelers need not provide copies of the law to ProCaps.

- 6 -

3. **Request No. 35, 36 and 37**

Request Nos. 35, 36, and 37 are more requests asking for information concerning how much Travelers spends on its own defense. As discussed above, such information is not relevant. Travelers has no obligation to respond to these requests.

4. **Request No. 38**

Request No. 38 seeks documents which show the five highest billing rates paid by Travelers on behalf of an insured who has been sued in the last 10 years. This is a very narrow request for documents that should be readily available to Travelers. Additionally, the attorney rates Travelers has been willing to pay in the past is clearly relevant to this case. Accordingly, these documents must be produced, but only to the extent that they show billing rates, not total amount paid.

F. Audit of Sidley Bills - Request Nos, 12, 31 and 32

Travelers asserts that it has already produced all non-privileged documents requested by Requests 12, 31 and 32. Response (#56) at 13. However, as discussed above, the privilege log is deficient. Nowhere in the privilege log does Travelers identify documents relating to the audit of Sidley Austin. Privilege Log attached as Exhibit 29 to Response (#56). Rather, all the descriptions are just "claims notes" or "emails". *Id*. Such lacking descriptions make it impossible for ProCaps or the Court to identify which documents relate to this request but are privileged. Accordingly, as ordered above, Travelers must revise its privilege log.

Additionally, Travelers must produce all documents responsive to these requests which are not identified in the original privilege log. However, if Travelers has done so already, as indicated in the Response (#56) at 13, then it must identify for ProCaps which documents it has produced that are responsive to these requests.

G. Documents Concerning Pre-Tender Fees - Request No. 39

Request No. 39 seeks all documents that reflect all instances in the last ten years in which Travelers has reimbursed an insured for pre-tender legal expenses. Motion to Compel (#37) at 20. Travelers objects to this request on the grounds that whether it is required to pay pre-tender fees varies by jurisdiction. Response (#15) at 14. ProCaps does not dispute that this

- 7 -

determination varies by jurisdiction. Reply (#62) at 13.  Thus, a request for "all" instances is seeking irrelevant information and is overly broad.  Accordingly, Travelers need not comply with this request.

H.   Reinsurance Documents - Request No. 40

ProCaps asserts that communications between Travelers and any reinsurer are relevant to show Travelers' understanding of the magnitude of the QVC Action. Motion to Compel (#37) at 22.  Travelers asserts that most of the information it received regarding the QVC Action came from Sidley Austin. Response (#56) at 15.  "Communications with reinsurers are only discoverable if they are relevant to a party's claim or defense." *Olin Corp. v. Cont'l Cas. Co.*, 2011 WL 3847140, *5 (D. Nev. Aug. 30, 2011).  Here, whether Travelers understood the QVC Action is not relevant to ProCaps claims and defenses. Thus, this information is not discoverable.

II.  **Interrogatories**

A.   Interrogatory No. 7

Interrogatory No. 7 was answered in the Response (#56) at 17.  This indicates the parties failed to meet and confer on this issue prior to filing the motion to compel.

B.   Interrogatory No. 8

Interrogatory No. 8 requests the "name, job title, address and telephone number" of the person or persons who were involved in the decision to file this case. Motion to Compel (#37) at 23. Travelers responded that such information was privileged, but "[w]ithout waiving any objections, Amy M. Baker, with the advice and counsel of her attorneys."*Id*.  This response fails to give the requested information about Baker and it fails to identify the attorneys involved. Travelers has not provided an argument for why such information should not be produced. Instead, Travelers asserts that it has responded fully.  The Court disagrees.  Accordingly, Travelers must supplement its response to Interrogatory No. 7.

III. **Costs and Fees**

ProCaps has requested cost and fees pursuant to Fed.R.Civ.P. 37 associated with bringing its Motion to Compel (#37).  Under Fed.R.Civ.P. 37, the Court may award costs and fees upon granting a Motion to Compel if the objections were not substantially justified.  The Court finds

- 8 -

that Travelers' objections were substantially justified.  Accordingly, ProCaps request for costs and fees is denied.

## ORDER

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that ProCaps' Motion to Compel answers to Interrogatories and Production of Documents (#37) is **GRANTED in part and DENIED in part**.

IT IS FURTHER ORDERED that ProCaps' Motion to Compel responses to Requests for Production Nos. 10, 11, 15, 18, 19, and 20, is **GRANTED**.

IT IS FURTHER ORDERED that ProCaps' Motion to Compel responses to Interrogatory No. 8 is **GRANTED**.

IT IS FURTHER ORDERED that ProCaps' Motion to Compel responses to Requests for Production Nos. 1, 2, 3, 4, 12, 31, 32, and 38, is **GRANTED in part and DENIED in part in accordance with this Order**.

IT IS FURTHER ORDERED that ProCaps' Motion to Compel responses to Request for Production Nos. 16, 17, 35, 36, 37, 39, and 40 is **DENIED**.

IT IS FURTHER ORDERED that ProCaps' Motion to Compel responses to Interrogatory No. 7 is **DENIED as moot**.

IT IS FURTHER ORDERED that **Travelers shall revise its privilege log in accordance with this Order**.

IT IS FURTHER ORDERED that ProCaps request for Costs and Fees is **DENIED**.

DATED this  5th   day of February, 2013.

NANCY J. KOPPE
United States Magistrate Judge